## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Crim. No. 3:96-114 (MJD/JGL) |
| Plaintiff, | |
| v. | |
| **WILLIAM CHARLES PUGH,** | **REPORT AND RECOMMENDATION** |
| Defendant. | |

**COMMONWEALTH LAND TITLE
INSURANCE COMPANY,**

Petitioner,

**FIRSTAR BANK OF MINNESOTA, N.A.,**

Petitioner,

**ANNE MARIE BORNE,**

Petitioner,

**NANCE REEVES,**

Garnishee,

**SHERI L. LAUCKNER,**

Garnishee.

### APPEARANCES

Mary L. Trippler, Esq., Assistant U.S. Attorney, for Plaintiff United States

Rachel C. Delich, Esq., for Defendant William Charles Pugh

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came before the undersigned Chief

Magistrate Judge of District Court on July 26, 2005 for an evidentiary hearing

pursuant to the direction of the Eighth Circuit Court of Appeals.  Also before

the Court are the Government's Motions for Sanctions (contained in Doc. No.

266), to Exclude Testimony of Karen Runyon (Doc. No. 284), and to Exclude

Evidence of Commercial Reasonableness (Doc. No. 288).  The case has been

referred to the undersigned for resolution of pretrial matters pursuant to 28

U.S.C. § 636 and D. Minn. LR 72.1.  The instant Report and Recommendation

addresses the underlying evidentiary issues, while an accompanying Order

addresses the Government's Motions.

## I.      INTRODUCTION

As stated in prior Orders by this Court, Defendant William

Charles Pugh, an attorney, was convicted in 1997 for orchestrating a massive

fraudulent scheme involving multiple counts of mail and wire fraud, interstate

and foreign transportation of money obtained by fraud, money laundering,

and fraudulent concealment of material facts from a federal agency.  Following

Pugh's jury trial, the Honorable Michael J. Davis ordered him to pay

restitution for the benefit of his victims in the amount of $1,130,977.54, plus

interest, costs, and surcharge.  On direct appeal, the Eighth Circuit upheld

thirty-two of thirty-three convictions against Pugh.  Defendant's license to

practice law in the state of Minnesota has been indefinitely suspended, but

not revoked.

When Pugh was released from custody, the United States sought a

garnishment order against him in pursuit of his restitution debt.  After

Defendant contested the writ of garnishment and was denied a hearing on

Federal Debt Collection Procedure Act ("FDCPA") claims, Pugh again appealed

to the Eighth Circuit.  As a result, this matter is now before the undersigned

on remand to determine the three limited issues of "what payments Pugh has

made on the restitution debt, any exemptions to which he might be entitled,

and the government's compliance with FDCPA."  United State v. Pugh, 75 Fed.

Appx. 546, 2003 WL 22048360, at *1 (8th Cir. Sept. 3, 2003).  The Eighth

Circuit emphasized that "the hearing will not be an opportunity for Pugh to

challenge the validity of the underlying conviction or restitution obligation."

Id.

Since the matter was remanded, this Court has held several status

conferences, and the parties have met amongst themselves to determine

whether victim Petitioner Commonwealth Land Title Insurance Company

("Commonwealth") received any additional funds that should be credited

toward Pugh's restitution debt.  The collection of restitution has been complex

and lengthy, with payments from third party guarantors and receivers,

settlements with other third parties, and sales of Pugh's assets.  As Pugh's

primary victim, Commonwealth has undertaken most of the collection activity,

although other sums have been collected by a receiver and the Clerk of Court

and forwarded to Commonwealth.

In February 2005, this Court heard and granted a Motion by

Petitioner Anne Marie Borne to be Substituted as a Restitution Payee for

$147,012.21, the amount Borne had paid Commonwealth on Pugh's behalf.

(Order of Feb. 15, 2005 at 4-6.)  Pugh had victimized Borne in his capacity as

Borne's attorney, and convinced her to convey a security interest in accounts

allegedly worth $350,000 to Commonwealth.  Pugh did not contest the Court's

Order regarding Borne.

On July 26, 2005, the Court held an evidentiary hearing to

resolve the three issues remanded by the appellate court.  Defendant was

present and represented by counsel.  Numerous exhibits were admitted into

evidence by both the Government and Pugh.  Three witnesses testified during

the evidentiary portion of the hearing: U.S. Attorney's Office Paralegal

Supervisor Cindy Loken testified for the Government, counsel for

Commonwealth James Lockhart testified for the Government, and Defendant

Pugh testified on his own behalf.  The Court allowed the Government and

Defendant to each submit a post-hearing memorandum limited to the issues

remanded by the Eighth Circuit, before Friday, August 5.[1]  This Report and

Recommendation addresses only those questions before the Court on remand

from Pugh's objections to garnishment; all other remaining issues are

addressed in the accompanying Order.

## II.    DISCUSSION

The parties informed the Court at the hearing on July 26 that

only the first of the three questions remanded by the appellate court remains

at issue: what payments Pugh has made on the restitution debt.  At the

hearing, Pugh also narrowed his challenges to the payment calculation.  In his

post-hearing briefing, he further narrowed his objections.  Consequently, only

two discrete areas of contention remain: whether Commonwealth realized

sufficient value for Pugh's assets when it released mortgages involving a land

development in Prior Lake, Minnesota; and whether restitution payee Borne

has been repaid some of the sums that she paid toward restitution on Pugh's

behalf.

---

[1] By letter dated August 8, this Court denied Defendant's meritless
request to strike the Government's post-hearing memorandum in its entirety.
Pugh's counsel incorrectly asserted that the Government had surpassed a
page limit where none was imposed.  Contrarily, Defendant's post-hearing
memorandum impermissibly addressed the issue of sanctions, which had
been fully briefed prior to the hearing and which was outside the narrow
limits set for post-hearing briefing.  Hence, the Court strikes the portion of
Pugh's memorandum exceeding the scope of the Court's allowance, as
explained in the corresponding Order.

### A.    <u>Standard of Review</u>

As noted above, this criminal case is presently proceeding under

the FDCPA, 28 U.S.C. §§ 3001 though 3308, as Pugh challenged the

Government's writ of garnishment issued pursuant to Judge Davis's

imposition of restitution.  <u>Pugh</u>, 75 Fed. Appx. at 547, 2003 WL 22048360, at

*1.  With regard to the standard of review for writs of garnishment, the FDCPA

states that the "party objecting [to the writ] shall state the grounds for the

objection and bear the burden of proving such grounds."  28 U.S.C. §

3205(c)(5).

Nonetheless, Defendant Pugh asserts that the Government bears

the burden of proof at this stage.  Pugh hinges his argument on the fact that

of all the subsections in the FDCPA, the only one mentioned by the Eighth

Circuit specifically in the order remanding this matter for a hearing was 28

U.S.C. § 3202(d), which sets forth the parameters of such a FDCPA

garnishment hearing.  Otherwise, the appellate court referred generally to the

statute by its abbreviated title, FDCPA.  <u>Pugh</u>, 75 Fed. Appx. at 546-47, 2003

WL 22048360, at *1.  The court did not discuss who retained the burden of

proof upon remand.  <u>Id.</u>  Because 28 U.S.C. § 3202(d) does not mention

burden of proof, Pugh contends that the Court should ignore the FDCPA's

burden of proof provision at § 3205, and instead utilize 18 U.S.C. § 3664(e),

which is not part of the FDCPA, but which does allow a court to assign the burden of proof as justice requires in enforcing an order of restitution.

The Court rejects Pugh's tenuous argument and instead applies the burden of proof as directed by the FDCPA.  Moreover, even if this Court were to apply the inapposite analysis of 18 U.S.C. § 3664(e), it would find that justice requires the convicted felon Pugh to prove up his arguments that less money remains due his long-suffering victims.  Accordingly, Pugh bears the burden of proving the grounds for his objections.

**B.      Victim Commonwealth's Release of Prior Lake Mortgages**

In February 1994, Pugh assigned to Commonwealth three mortgages for a real estate development in Prior Lake, which he asserts carry a worth of $480,000, their collective assigned face value.[2]  The same year, Commonwealth negotiated releases of the mortgages for the total sum of $226,000, and the Government credited Pugh with that amount.  Defendant claims that he should be credited an additional $254,000 toward his restitution debt, maintaining that Commonwealth's failure to realize the mortgages' face value should be credited to the detriment of victim Commonwealth and to the benefit of Pugh.

---

[2] The mortgages and releases are found at Defendant's Exhibit 1.

Upon cross examination at the hearing, Pugh admitted that he has no appraisals to value the Prior Lake properties reflected in the mortgages, and that the $480,000 face value was not based on appraisals. Pugh also stated that the mortgages were security for payment and do not represent evidence of actual payment. Further, Pugh acknowledged that he has no information regarding what claims, liens, or encumbrances may have been attached to the properties before the mortgages were released. He additionally admitted that, on behalf of Commonwealth, Pugh personally signed and authorized the warranty deed releases at issue throughout 1994, without objection at the time. Pugh's only evidence of valuation is the face value of the mortgages and his own subjective opinion.

Pugh does not argue that Commonwealth failed to properly report the amounts it actually realized, or that the Government failed to properly account for the sums reported. Rather, Pugh contends that the operative question for the Court is "whether the Government has credited Pugh with payments toward his restitution debt in a commercially reasonable manner," and asserts that the Government is obliged to ensure the commercially reasonable disposal of assets to maximize recovery for the victim. For his sole support, Pugh relies on the recent, non-binding decision by the Ninth Circuit Court of Appeals regarding disposal of personal papers and mementos of the Unabomber Ted Kaczynski. United States v. Kaczynski, __ F.3d __, 2005 WL

1692494 (9th Cir. July 21, 2005).  There, the court chastised the government

for failing for several years to either return the personal affects or sell them for

restitution, finding the government's plan to simply keep the property to be

inconsistent with its duty to maximize the recovery for restitution for

Kaczynski's seriously injured victims.  Id. at *5.  In the present case, the

Government claims that Pugh misconstrues Kaczynski insofar as he argues

that the Government has some duty to a criminal defendant to verify that a

victim like Commonwealth, which has taken action under state law to collect

its own losses, maximizes recovery.

      The Court agrees that Kaczyinski does not require the

Government to prove the "commercial reasonableness" of Commonwealth's

release of the Prior Lake mortgages, and likewise does not require this Court

to somehow ascertain the same.  The Court emphasizes that the duty of the

Government in this regard is to the crime victim, not the perpetrator.  The

proper focus of criminal restitution is the victim of the crime.  See, e.g., 18

U.S.C. §§ 3663, 3663A, 3664, 3771.  Moreover, if Defendant has valid claims

against Commonwealth, he must allege those in an action against his victim,

rather than in the context of this criminal proceeding wherein Commonwealth

is not a party.  See United States v. Cupit, 169 F.3d 536, 540 n.3 (8th Cir.

1999).  In a separate proceeding, Commonwealth would be able to assert any

defenses it may have against Pugh's allegations, including statute of

limitations, res judicata, and claim and issue preclusion.  The commercial

reasonableness of Commonwealth's actions with respect to the Prior Lake

mortgages is not an issue properly before this Court.[3]

As Pugh does not challenge Commonwealth's collection amount or

the Government's accounting of the Prior Lake mortgage releases, and as he

has put forth no persuasive evidence to dispute the $226,000 valuation, the

Court recommends that Pugh has not met his burden of proving his objection.

Pugh's objection regarding the Prior Lake mortgages should be overruled.

### C.    Asserted Payments to Victim Ann Marie Borne

Defendant Pugh presented two exhibits at the evidentiary hearing

which he purports show payments to victim Borne, substituted as a restitution

payee in the amount of $147,012.21 by this Court's Order of February 15,

2005.  (Def.'s Exs. 3, 4.)  Pugh did not object to or attempt to receive

reconsideration of this Court's Order of February 15.  Borne did not testify at

the July 26 hearing.

Defendant's Exhibit 3 reflects a transfer of Pugh's interest in land

in the Cayman Islands to Borne in consideration of a payment of $20,000, and

Pugh now argues that he should be credited the $20,000 toward his

---

[3] Even if this Court were to engage in the amorphous commercial reasonableness inquiry, with the evidence of record, it could not find that Commonwealth released the properties at such a price as to be unreasonable.

restitution debt.  The document lacks a signature by Borne.  Importantly,

Pugh presents no evidence whatsoever of the $20,000 payment having been

made by Pugh or received by Borne.  Additionally, the first time Pugh raised

this assertion was in July 2005.  Pugh suspiciously failed to mention this

alleged $20,000 in or before February 2005 when this Court was determining

the amount of restitution owed to Borne, and he can offer no explanation now

as to why he failed to do so.  The Court finds that because Pugh has not

provided any evidence of payment, he has not met his burden of proof with

respect to this objection.  Defendant's objection regarding the $20,000

Cayman Islands interest should be overruled.

Defendant's Exhibit 4 contains an assignment of rents from Pugh

to Borne for rental property in Devil's Lake, North Dakota, for the period of

July 1, 1997 to July 1, 2001.  The document is dated July 9, 1997, and

contains no signature by Borne.  Pugh contends that he should be credited

$18,700 toward his debt for rents he believes were received by Borne under

that assignment.   Similar to the Cayman Islands transfer, Pugh inexplicably

failed to mention this assignment of rents issue at the time this Court was

determining the amount of restitution owed Borne.  Before and at the July 26

evidentiary hearing, Defendant provided no evidence of payments actually

received by Borne for this assignment.  Additionally, other than by arguing

after the hearing that the payments were "to help defray the restitution costs

[Borne] paid to Commonwealth" (Def.'s Post-Hrg. Mem. at 6), Pugh has not

shown that the assignment was provided for the same loss as covered by the

restitution Order here.  The document itself states that it is executed "in favor

of Borne relating to a debt owing by Pugh to Borne."  (Def.'s Ex. 4 at 1.)

However, in his post-hearing briefing, Pugh presents a new

Affidavit and evidence in an effort to prove that Borne received some payments

under this assignment.  (Def.'s Post-Hrg. Mem. at 7 n.1; Pugh Aff. of Aug. 5,

2005 ¶¶ 1-5 and Ex. 1.)  Specifically, Pugh attached copies of six cancelled

checks, each for $200 made out to Borne from Garnishee Nance Reeves.

(Pugh Aff. of Aug. 5, 2005 Ex. 1.)  The earliest, from 1998, includes a notation

indicating the payment is for rent.  (Id. at 1.)  Pugh omits any explanation as

to why he failed to present this evidence at the July hearing.  As a result, the

Government has been left with no opportunity to respond or object to the

proof now offered.  Also, Pugh continues to argue that he should be credited

with $18,700 in payments because he believes that is the total amount Borne

received through July 1, 2001 under their assignment agreement.

The Court notes that despite two years of remand proceedings

related to restitution and two evidentiary hearings on this particular issue of

the amount owing to Borne, Pugh has provided only evidence regarding a total

of $1,200 in rental payments received by Borne.  Further, Defendant has still

offered the Court no evidence that the July 1997 debt owed to Borne, as

referenced in the assignment of rents, is related to the payments Borne made

to Commonwealth on behalf of Pugh.   Hence, this Court is unable to

determine by a preponderance of the evidence that the $1,200 in rents

received by substituted restitution payee Borne should be credited toward

Pugh's restitution debt.   The Court recommends that Pugh has not met his

burden of proof in this regard.[4]   In conclusion, both of Pugh's objections

regarding the amount of restitution owed to Borne should be rejected.

### D.   Conclusion

The Court recommends that Defendant Pugh has proved the

grounds for none of his objections to the amount found owing on his

restitution debt, and that his objections be overruled in their entirety.

Accordingly, as demonstrated by Government Exhibits 11 and 12, Defendant

should owe $711,509.43 in restitution, penalties, and costs, as of July 20,

2005.

---

[4] In its post-hearing memorandum, the Government reminded Pugh that if he has proof of payment to Borne and evidence that payment was made for Borne's loss, he is free to submit the proof to the Government.   Consistent with the Government's treatment of other payments reported, sums proven as paid for such loss would be deducted from the restitution balance due.   (Gov't Post-Hrg. Mem. at 18.)

Based upon all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that Defendant William C. Pugh's garnishment

objections should be **OVERRULED**.


Dated: August 18, 2005                     s/ Jonathan Lebedoff
                                           JONATHAN LEBEDOFF
                                           Chief United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and
Recommendation by filing with the Clerk of Court and serving all parties by
September 7, 2005, a copy of specific, written objections.  A party may
respond to the objections within ten days after service thereof.  All objections
and responses filed under this rule shall not exceed 3,500 words.  A District
Judge shall make a de novo determination of those portions to which
objection is made.  Failure to comply with this procedure shall operate as a
forfeiture of the objecting party's right to seek review in the United States
Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to
stipulate that the District Court is not required by 28 U.S.C. § 636 to review a
transcript of the hearing in order to resolve all objections made to this Report
and Recommendation, the party making the objections shall timely order and
cause to be filed within ten days a complete transcript of the hearing.